**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-CV-24361-KMM**

**DARLENE WAMPOLE**,

      Plaintiff,

v.

**CARNIVAL CORPORATION,**

      Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S DAUBERT MOTION/MOTION TO STRIKE**

Defendant, CARNIVAL CORPORATION ("Carnival"), by and through undersigned

counsel, hereby responds in opposition to Plaintiff's *Daubert* Motion/Motion to Strike [ECF No.

38], and states as follows:

### I.    LEGAL STANDARD

The decision to admit or exclude expert testimony is within the trial court's discretion and

the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See*

*Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony

is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of

laying the proper foundation for its admission, and admissibility must be shown by a

preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th

Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden

of establishing qualification, reliability, and helpfulness rests on the proponent of the expert

opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do

> not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.' " *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.' ") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*,

509 U.S. at 595 (quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991).

## II. ARGUMENT

### a. Plaintiff's Claims and Alleged Injuries

Ms. Wampole brings this action after a wooden deck maintenance hatch she was walking over collapsed.[1] Thereafter, she was treated onboard the cruise ship for a scratch on her right knee that was not actively bleeding. *See* **Exhibit 1** (Plaintiff's Onboard Medical Records). The onboard medical team responded to Plaintiff's complaints of tenderness and pain on her right knee and ankle and stiffness to her right shoulder. *Id.* Onboard x-rays depicted no fractures or dislocations to Plaintiff's right ankle, right knee, and right shoulder. *Id*. She was ultimately diagnosed with a sprain/strain to her ankle, knee, and shoulder. *Id*.

Given the absence of an acute/traumatic injury associated with her incident, Plaintiff immediately sought out a diagnosis of complex regional pain syndrome ("CRPS"). *See* **Exhibit 2** ("The legal team from her office told [her] that she needs to get her nerve function checked."). In discovery, Plaintiff claims orthopedic injuries pertaining to her right knee, right ankle, and nerve issues. *See* **Exhibit 3** (Plaintiff's Supplemental Answers to Defendant's Initial Interrogatories) at pgs. 7 - 10. Over a year has passed since Plaintiff's incident occurred, and she is still without an actual CRPS diagnosis for her incident onboard, *even from her own neurologist retained in this litigation*. *See* **Exhibit 4** (Report from Dr. Plaintiff's Neurologist Expert Dr. Herskowitz) at pg. 3.

---

[1] For a more thorough account of the incident, see Defendant's Statement of Material Facts in Support of its Motion for Summary Judgement, and record evidence cited therein, at ECF No. 40.

In discovery, Plaintiff disclosed three experts: (1) engineer Dr. Fernando De Caso to opine on liability/the design of the wooden deck hatch; (2) orthopedic surgeon Dr. Cesar Ceballos; and (3) neurologist Dr. Brad Herskowitz.

Defendant disclosed two medical experts: (1) orthopedic surgeon Dr. Joseph Fernandez, and (2) neurologist Dr. Martin Myers. Defendant also disclosed engineer Dr. Cliff Bishop to rebut Dr. Fernando De Caso's opinions.

**b. Engineer Cliff Bishop's Rebuttal Opinions Are Reliable and Will Assist the Jury.**

To start, Defendant's engineering expert Dr. Cliff Bishop's opinions are made in rebuttal to Plaintiff's engineering expert Dr. De Caso's opinions. Dr. De Caso list multiple purportedly applicable standards and guidelines and opines that "there was a high risk for a falling incident involving Ms. Wampole on the access cover on deck 14 due to the lack of adequate support beneath the access cover," and that Carnival "failed to properly specify, repair, warn, or otherwise routinely monitor, maintain, and mitigate the hazardous deck surface, which also serves as a vessel emergency means of egress. This is necessary for reasonably safe pedestrian access required in vessels such as the Carnival Conquest[.]" *See* **Exhibit 5** (Dr. De Caso's Report) at pg. 23.

Within his rebuttal report, Dr. Bishop lists three main opinions:

1. The area where the Incident occurred is not a means of egress for the vessel.

2. The codes and standards cited by Dr. De Caso do not dictate the design or construction of deck hatches on cruise ships.

   i. The "land-based" codes and standards cited by Dr. De Caso are not relevant to the design or construction of deck hatches on cruise ships.

   ii. The "maritime-based" codes and standards cited by Dr. De Caso, if relevant, and applicable, do not dictate the design or construction of deck hatches.

3. An impending failure of the subject hatch would not have been immediately obvious.

ECF No. 38-4, pg. 5.

Defendant first addresses that Dr. Bishop's opinions satisfy *Daubert*. To begin, Dr. Bishop is qualified. *See* **Exhibit 6** (CV of Dr. Bishop). He is a licensed professional and structural engineer at Exponent. He received his Bachelor of Science, Master of Science, and Doctor of Philosophy degrees in Civil Engineering (with an emphasis in Structural Engineering) from the Georgia Institute of Technology (Georgia Tech). His academic background includes the incorporation of probability and risk into the design process for steel and concrete structures. This includes experience in structural reliability and dynamics. Prior to joining Exponent, Dr. Bishop worked for a structural design firm in Atlanta, Georgia where he designed building constructed using wood framing and consulted on several projects to develop systems and components to protect buildings from blast effects and reduce the risk of progressive collapse. At Exponent, he had led investigations of concrete, steel, wood, and masonry structures and their interior finishes that were damaged as a result of design/construction defects, construction procedures, and natural hazards such as wind, floods, hurricanes, and earthquakes. Dr. Bishop has utilized his experience in interpreting and applying codes and standards on several personal injury cases that occurred in and around buildings and commercial spaces including slip, trip, and fall incidents.

Dr. Bishop's methodology is reliable. As part of Dr. Bishop's investigation, he reviewed case materials, including the Complaint, vessel specifications, marketing materials, Plaintiff's deposition transcript, and photographs. *See* **Exhibit 7** at pg. 26 ("Documents Relied Upon")[2]. Dr. Bishop also reviewed codes, standards, and technical literature relied upon by Plaintiff's expert. *Id*.; *see See Johnson v. Carnival Corp.*, 533 F.Supp.3d 1196, 1202 (S.D. Fla. 2021) (denying *Daubert* motion, stating "Mr. Emond addresses the procedures followed, including the materials

---

[2] This was included in Dr. Bishop's report, but not filed by the Plaintiff with her Daubert Motion.

he reviewed, which include photographs […], the scope of his inspection on the [ship], and the applicable rules, industry standard and guidelines. The Court finds that his methodology is sufficient for present purposes.") (internal citations omitted).

Dr. Bishop will be helpful to the jury in evaluating Dr. De Caso's opinions. Dr. De Caso's opinions that the deck that collapsed was hazardous and that Carnival "failed to properly specify, repair, warn, or otherwise routinely monitor, maintain, and mitigate the hazardous condition" are based largely on standards and guidelines listed within his report. Dr. Bishop, through his experience as a structural engineer and his review of case materials, opines that those standards and guidelines upon which Dr. De Caso relies are inapplicable to the area where Plaintiff fell.

Plaintiff argues Dr. Bishop should be stricken based on two isolated issues. First, because Dr. Bishop addresses that the hatch had "resisted pedestrian load from cruise passenger over its life" yet he "provides no load data, no ship maintenance records, and no support from classification society rules that govern deck hatch construction." ECF No. 38 at pg. 7. Second, because "[t]here is simply no methodology to support Bishop's conclusion that the failure of the hatch was not foreseeable, and this opinion is simply *ipse dixit*." *Id*.

As discussed above, Dr. Bishop employed a reliable methodology and his opinions are relevant and helpful to this case. To the extent Plaintiff claims Dr. Bishop lacks specific data, so does Dr. De Caso. A finding that Dr. Bishop utilized a reliable method to form his opinions "renders an inquiry into specifics about what he did not include in his report irrelevant." *Castro,* 2022 WL 3048255 at *6. "Plaintiff can obviously cross-examine [Dr. Bishop] and seek to undermine the conclusions he reached at trial. Plaintiff's challenge more properly focuses on the weight the jury should ascribe to the expert's opinions rather than their admissibility." *Id.* at *7 (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004)

(questions relating to the bases and sources of an expert's opinion generally go to the weight of that opinion rather than its admissibility); *see also Banta Properties, Inc. v. Arch Specialty Ins. Co.*, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (even if one source of expert's was imperfect, exclusion not warranted where "expert's method need not be perfect, nor need he apply it perfectly.)" (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011)) (noting that a rebuttal expert could testify to the flaws in a report based on imperfect data or imperfect methodology); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, summary judgment."); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on admissibility.") (internal quotation omitted); *Ostroski v. United States*, 2007 WL 9701868, at *2 (S.D. Fla. Aug. 23, 2007) ("Any claimed weakness in the factual basis for [an expert's] conclusion ... goes at best to weight and credibility, and can certainly be explored on cross examination.").

Accordingly, Plaintiff's request that Dr. Bishop be stricken pursuant to *Daubert* must be denied.

### c.  Neurologist Dr. Myers' Opinions Are Reliable and Will Assist the Jury.

Dr. Myers's opinions satisfy *Daubert*.

First, Dr. Myers is qualified to offer opinions regarding nerve injuries and whether Plaintiff has CRPS. *See* **Exhibit 8** (CV of Dr. Myers). He is a neurologist and pain management specialist who practices in Florida. He obtained his Bachelor of Science in Biology with Honors from Duquesne University his Doctor of Medicine from the University of South Florida College of

Medicine. He completed his Neurology Residency (as Chief Resident) and Interventional Pain Management Fellowship Program at University of South Florida College of Medicine. He is Board Certified in both Neurology and Pain Medicine (scoring in the 100th percentile of all exam takers). He is currently an Associate Clinic Director at James A Haley VA in Tampa, Florida.  In addition to presenting on the subject, he routinely diagnoses and treats CRPS in his practice.

Second, Dr. Myers utilized a reliable methodology. Dr. Myers reviewed Plaintiff's medical records, diagnostic imaging, bone scan study, and nerve conduction study. ECF No. 38-1 at pgs. 1 – 3. He also summarizes the criteria for the diagnosis of CRPS. *Id.* at pg. 3. He notes within his report that his medical opinions are based on his experience and education as an actively practicing Board-Certified Neurologist and Pain Management physician, and the records he reviewed and received. *Id.* at pg. 4.

It is not necessary for Dr. Myers to have physically examined Plaintiff in order to provide these opinions – his experience and his records review is enough. Chief Judge Altonaga addressed a similar argument in *Geyer v. NCL (Bahamas), Ltd.*, 203 F.Supp.3d 1212, 1217 (S.D. Fla. 2016)

> Relevant case law states "the fact that a physician has not examined the plaintiff does not necessitate a finding that any such expert report or testimony offered by the physician is inadmissible under *Daubert*." *Rafferty v. Erhard*, No. 09–CV–1019, 2012 WL 2577473, at *7 (W.D.N.Y. July 3, 2012); *see also Giladi v. Strauch*, No. 94–CIV–3976–RMB–HBP, 2007 WL 415365, at *9 (S.D.N.Y. Feb. 6, 2007) (medical expert's opinions "are not mere ipse dixit pronouncements" because they are based upon his review of medical records and "his extensive experience as an orthopedic and hand surgeon"); *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir.1994) (medical expert's testimony based on thirty years of experience and his review of medical records and published materials was " 'ground[ed] in the methods and procedures of science' and was not mere 'unsupported speculation.' " (alterations in original) (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786)).

The Court in *Geyer* declined to strike an orthopedic surgeon's opinions under *Daubert* simply because he did not perform a medical examination of the plaintiff. The Court found the

orthopedic surgeon's opinions admissible because it was based "on his twenty-six years of experience as an orthopedic surgeon and his review of Plaintiff's medical records." *Id*.

Further, Plaintiff's argument that Dr. Myers "fails to demonstrate" how he applied diagnostic criteria is both (1) incorrect and (2) irrelevant to a *Daubert* motion. As to the former, Dr. Myers lays out the criteria for diagnosing CRPS in his report before explaining why in his medical opinion he does not believe she has it. *Id*. at pgs. 3 – 4. As to the latter, "the Court's focus when determining whether or not to exclude an expert is solely on the methodology by which the expert forms his opinions, and not the conclusions the expert generates. Therefore, a finding that [Dr. Myers] utilized a reliable method to form his opinions renders an inquiry into specifics about what he did not include in his report irrelevant." *Castro v. Carnival Corp.*, No. 21-20373-CV, 2022 WL 3048255, at *6 (S.D. Fla. July 11, 2022) (citing *Daubert*, 509 U.S. at 594-95).

In fact, Plaintiff's entire *Daubert* motion against Dr. Myers appears to be based on a fundamental misunderstanding of how to properly diagnose CRPS. CRPS is a diagnosis of exclusion – other potential causes *must be ruled out before it can be made*. Plaintiff's argument that "Dr. Myers presents no methodology for distinguishing *between CRPS and the alternative conditions he speculates about*" does not medically make sense.

Regardless, returning here, Dr. Myers' report provides his CV and recounts the records he reviewed. His experience and specialty in neurology and pain medicine qualifies him to offer reliable and helpful opinions with regards to Plaintiff's claim of CRPS. Plaintiff's Motion should therefore be denied.

### d. Orthopedic Surgeon Dr. Fernandez's Opinions Are Reliable and Will Assist the Jury.

Plaintiff's argument appears to be that (1) Dr. Fernandez is not qualified to opine on CRPS; (2) his opinions that MRI findings show pre-existing and degenerative conditions and that Plaintiff

is at maximum medical improvement with no permanent injury ("MMI") are unreliable, (3) and his opinions are unhelpful for these reasons.

First, Dr. Fernandez is not offering opinions on CRPS. Plaintiff, citing to nothing, claims Dr. Fernandez is offering "sweeping causation opinions on the subjects." No, he is not. A review of Dr. Fernandez's report demonstrates that his in-person examination concerned Plaintiff's knees, ankles, and shoulders. ECF No. 38-3 at pgs. 6 – 8. Based on Plaintiff's complaints, he ordered and interpreted imaging, "from an orthopedic standpoint," of both Plaintiff's knees, her left ankle, and her right shoulder. *Id* at pg. 7. Dr. Fernandez also reviewed Plaintiff's medical records regarding orthopedic complaints to these areas. *Id*. at pgs. 2 – 6. Nowhere within Dr. Fernandez's report does he purport to offer opinions on CRPS. Plaintiff's argument is baseless and without merit.

Dr. Fernandez is offering orthopedic opinions and he is qualified to do so. He is a board-certified orthopedic surgeon and serves as Chairman of Orthopedic Surgery at Baptist Hospital. ECF No. 38-2. He has served as a team physician and consultant for a number of athletes for various sports programs. He has received numerous honors and awards for his orthopedic surgical practice and is frequent lecturer in surgery.

Second, Dr. Fernandez's orthopedic opinions in this case are based on a reliable methodology. He reviewed Plaintiff's medical records, personally examined Plaintiff, ordered and interpreted imaging of Plaintiff's knees, ankle, and shoulder, and reached his conclusions based on his experience and his records review. Thus, his method is sufficiently reliable. *See Geyer v. NCL (Bahamas) Ltd.*, 203 F.Supp.3d 1212, 1217 (S.D. Fla 2016) (finding orthopedic surgeon's opinions reliable based on his experience and medical records review, even where he did not physically examine the plaintiff); *Smith v. Carnival Corporation & PLC*, No. 22-CV-22853, 2023 WL 8370478, at *15 (S.D. Fla. Dec. 4, 2023) (finding no basis to strike orthopedic surgeon using

same methodology). To the extent Plaintiff takes issue with Dr. Fernandez's conclusions – that Plaintiff has reached MMI and no further treatment is needed – that goes to the *weight* of evidence, not admissibility. *See Daubert*, 509 U.S. at 594-95, 113 S.Ct. 2786 (the inquiry into whether an expert's methodology is reliable is, "a flexible one, and its focus must be solely on principles and methodology, not on the conclusions that they generate."); *Castro v. Carnival Corp.*, No. 21-20373-CV, 2022 WL 3048255, at *7 (S.D. Fla. July 11, 2022) ("Plaintiff can obviously cross-examine [the doctor] and seek to undermine the conclusions he reached at trial. Plaintiff's challenge more properly focuses on the weight the jury should ascribe to the expert's opinions rather than their admissibility.").

Third and finally, Dr. Fernandez's opinions would be helpful to a jury. Plaintiff has claimed orthopedic injuries in this case. She has disclosed her own orthopedic expert, Dr. Cesar Ceballos, to comment on those alleged injuries. Plaintiff cannot claim Dr. Fernandez will be unhelpful to the jury from an orthopedic standpoint when she has offered an expert in the same specialty to address the same issues. Accordingly, Plaintiff's *Daubert* motion against Dr. Fernandez must be denied.

WHEREFORE, Defendant, CARNIVAL CORPORATION, respectfully requests that this Court deny Plaintiff's *Daubert* Motion/Motion to Strike [ECF No. 38], and for any further relief this Courts deems just and proper.

Dated: August 18, 2025

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Walter Cooper Jarnagin*
    Michael J. Drahos
    Florida Bar No. 0617059

#64518090 v1

michael.drahos@gray-robinson.com
W. Cooper Jarnagin
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
Ashley Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com