**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:24-cv-24361-KMM

DARLENE WAMPOLE,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____ /

## <u>ORDER</u>

THIS CAUSE came before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") Motion for Summary Judgment. ("Motion" or "Mot.") (ECF No. 41). Plaintiff Darlene Wampole ("Plaintiff") filed a Response in opposition. ("Resp.") (ECF No. 45). Defendant filed a Reply. (ECF No. 47). Thereafter, pursuant to this Court's Order granting Plaintiff's Motion to Continue Trial, Reopen Discovery, and to Stay Ruling on Defendant's Motion for Summary Judgment (ECF Nos. 50, 57), Plaintiff filed an Amended Supplemental Response to Defendant's Motion for Summary Judgment. ("Supp. Resp.") (ECF No. 61). Defendant filed a Supplemental Reply. (ECF No. 64). The Motion is now ripe for review. As discussed below, the Motion is GRANTED.

## I.    BACKGROUND[1]

This is a maritime personal injury action in which Plaintiff seeks to recover damages for injuries she sustained as a result of a fall while aboard Defendant's cruise ship, *Conquest*. *See generally* Compl.  Plaintiff was a fare-paying passenger aboard the Carnival *Conquest* in Miami, Florida on April 5, 2024.  DSMF ¶ 1; PSMF ¶ 1; Supp. PSMF ¶ 1.  Deck 14 forward portside of the *Conquest* contains a hot tub surrounded by an elevated teak wood deck.  DSMF ¶ 2; PSMF ¶ 2; Supp. PSMF ¶ 2.  While on the *Conquest*, Plaintiff traversed the teak wood deck adjacent to the hot tub on Deck 14.  DSMF ¶ 5; PSMF ¶ 5; Supp. PSMF ¶ 5.

The elevated teak wood deck contains a hatch on the floor that opens up and outwards so that maintenance can be performed on the hot tub in the space below.  DSMF ¶ 4; PSMF ¶ 4; Supp. PSMF ¶ 4.  Plaintiff fell through the closed hatch when the floor beneath her collapsed.  Compl ¶ 14; DSMF ¶ 7; PSMF ¶ 7; Supp. PSMF ¶ 7.  Plaintiff did not look to see if the teak wood deck was damaged, worn out, used or beat up.  DSMF ¶ 6; PSMF ¶ 6; Supp. PSMF ¶ 6.  The hot tub and elevated teak wood deck were designed and installed in 2017 by a third-party contractor, Tutto Tondo Solutions LLC.  DSMF ¶ 3; PSMF ¶ 3 (disputed to the extent that Carnival is claiming it had no involvement in the design of the hot tub and hatch); Supp. PSMF ¶ 3 (same).  As a result of the fall, Plaintiff claims that she "sustained severe injuries, including, but not limited to, injuries to her shoulder, knee, and ankle, among other injuries."  Compl. ¶ 15.

Plaintiff commenced the instant Action against Defendant on November 6, 2024.  *See*

---

[1] The following facts are taken from Plaintiff's Complaint ("Compl.") (ECF No. 1), Defendant's Statement of Material Facts ("DSMF") (ECF No. 40), Plaintiff's Response to Defendant's Statement of Material Facts ("PSMF") (ECF No. 44), Defendant's Reply Statement of Material Facts ("DRSMF") (ECF No. 48), Plaintiff's Amended Supplemental Response to Defendant's Statement of Material Facts ("Supp. PSMF") (ECF No. 60), Defendant's Response to Plaintiff's Supplemental Statement of Material Facts ("Supp. DRSMF") (ECF No. 64), and a review of the corresponding record citations and exhibits.

*generally id.* In her Complaint, Plaintiff asserts five claims against Defendant: (1) negligent failure to remedy (Count I); (2) negligent failure to warn of dangerous condition (Count II); (3) negligent design, installation, and/or approval of the subject floor and the vicinity (Count III); (4) negligence for the acts of Carnival's crew, staff, employees, and/or agents, based on vicarious liability (Count IV); and (5) vicarious liability for the negligent design, installation, and/or approval of the subject surface and the vicinity against Carnival (Count V). *See generally id.* Defendant now moves for summary judgment on all counts. *See generally* Mot.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of

material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.  DISCUSSION

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims. *See generally* Mot. First, Defendant argues that it is entitled to summary judgment on Counts I, II, and III, Plaintiff's direct liability claims, because Plaintiff has failed to show that Carnival had actual or constructive notice of a risk-creating condition. *Id.* at 6–8. Second, Defendant argues that it is also entitled to summary judgment on Count III because there is no evidence that Carnival designed or installed the teak wood deck at issue. *Id.* at 8–9. Third, Defendant argues that summary judgment is warranted on Counts IV and V because the facts of this case do not sound under vicarious liability, and there is no evidence of employee negligence to sustain the counts. *Id.* at 9–13. In response, Plaintiff argues that: (1) there is abundant evidence of notice as to Counts I, II, and III; and (2) there is sufficient evidence of Carnival's involvement in the design of the subject area. *See* Supp. Resp at 5–17. The Court addresses the arguments in turn.

### A.  Applicable Maritime Negligence Principles

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival*

*Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [his] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236–37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Miller v. NCL (Bahamas) Ltd.*, No. 1:15-CV-22254-UU, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers."). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (internal quotation marks and citation omitted).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise ship operator's liability

5

often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797.

Moreover, to establish that the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-CV-22105-UU, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

## B.     Actual or Constructive Notice

Plaintiff asserts three direct liability negligence claims, Counts I, II, and III, against Defendant. *See generally* Compl.  Defendant argues that there is no evidence establishing that it had notice of the alleged dangerous condition, the maintenance hatch on the teak wood deck adjacent to the hot tub on Deck 14, an essential element for all of Plaintiff's direct liability negligence claims. Mot. 6–8.  Specifically, Defendant argues that: (1) there is no evidence that a detectable defect existed with regards to this hatch that should have invited Carnival to take corrective measures; (2) "there are no prior incidents regarding passengers falling through a hole or a floor collapsing on this teak deck or similar teak decks within the *Conquest*-class of vessels[]"; (3) "no passengers complained of floors collapsing or holes opening on these teak decks within the *Conquest*-class"; and (4) there were no work order reports generated prior to Plaintiff's incident involving the subject hatch.  *Id.*  In response, Plaintiff argues that there is abundant evidence of notice based on Defendant's work orders, security watch report, photographic/expert evidence, the

testimony of Defendant's Facility Maintenance Manager Yordan Petrov ("Petrov"), and industry standards and design.  Supp. Resp. at 5–13.

"Actual notice exists when the shipowner knows of the unsafe condition."  *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). Alternatively, "[a] maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (cleaned up).  "[A] plaintiff can [also] establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'"  *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

As evidence of notice, Plaintiff first points to two of Defendant's work orders.  Supp. Resp. at 5–6.  The first work order, opened October 28, 2021, states "DK 14 port side whirlpool leaking from pump and rust casing."  Supp. Resp. at 5; (ECF No. 44-2) at 2.  The work order status reads "CLOSED" as of January 9, 2022, at 7:56.  Supp. Resp. at 5; (ECF No. 44-2) at 2.  The second work order, opened June 11, 2022, states "DK 14 FWD port side whirlpool varnishing to be done." (ECF No. 44-2) at 3.  The work order status reads "CLOSED" as of June 12, 2022, at 17:30.  *Id.* Carnival's Corporate Representative Monica Borcegue ("Borcegue") testified that she thought the work orders were produced based on a "leak of some sort that the whirlpool might have had." Supp. Resp. at 5; ("Borcegue Dep.") (ECF No. 40-4) at 33.

Plaintiff argues that this Court should find that these work orders are evidence of notice based on another court in this district's holding in *Selfridge v. Carnival Corp.*, No. 20-23308-CIV, 2022 WL 796378, at *6 (S.D. Fla. Mar. 16, 2022).  Supp. Resp. at 6.  In *Selfridge*, the court found that internal work orders, issued several months prior to the relevant incident, supported a finding

7

that there were genuine issues of fact as to whether defendant had constructive notice of the alleged danger. 2022 WL 796378, at \*6–7. There, the plaintiff alleged that a defective glass door suddenly and abruptly slammed on him. *Id.* at \*1. While the work orders did not specifically report an issue with the door slamming, the work orders reported "high priority noises coming from the door, as well as improper opening and closing of the door," and the court found that "a reasonably jury may find that Work Orders involving high priority noises coming from the door, as well as improper opening and closing of the door, are pertinent to the alleged malfunctioning of the door[,]" as to impute notice. *Id.* at \*7 ("For instance, a reasonable jury may conclude that both the scrunch and improper closing of the door reported in these work orders were indeed related to issues with the door's hinges or damping mechanism and, as such, Defendant should have been aware of the alleged danger.").

However, the work orders in the instant Action differ from those in *Selfridge*. *See generally* (ECF No. 44-2). First, the work order in *Selfridge* addressed issues with the door improperly opening and closing, where the defective closing of the door was also the cause of the plaintiff's injuries. 2022 WL 796378, at \*6–7. Conversely, here, neither work order references any issues with the hatch, the hatch's structural integrity, or the structural integrity of the teak wood deck adjacent to the whirlpool, as to put Defendant on notice that it could collapse. *See* (ECF No. 44-2). Second, the work orders in *Selfridge* were issued months before the relevant incident, while here the first work order was generated over two years before Plaintiff's incident and the second work order was generated almost two years before Plaintiff's incident. *See* Compl. ¶ 14; (ECF No. 44-2). There is no evidence that any additional work orders were issued closer to the relevant incident that reference deck 14 or the whirlpool, let alone a work order referencing anything pertinent to the allegedly dangerous condition here, the hatch and its structural integrity. The Court

finds that these two work orders could not have reasonably put Defendant on notice that the hatch next to the whirlpool was at risk of collapsing and to say otherwise would be mere speculation. *See Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 512 (11th Cir. 2019) ("'[S]peculation [is] insufficient to create a genuine issue of material fact.'" (quoting *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015))).

Second, as evidence of notice, Plaintiff points to the security watch report, created by Carnival's security officer after Plaintiff's incident. Supp. Resp. at 6–7. The security watch report states that the area where Plaintiff fell "was inspected . . . and [they] noticed parts of wooden deck seemed to be soft and damage[d] [, and] thereby area was cordoned/secured for safety reason[s]." *Id.* at 6; (ECF No. 44-3) at 6. However, as acknowledged by Plaintiff, this report was created after Plaintiff's incident, and the Court fails to see, nor does Plaintiff provide support, on how the report supports a finding that Defendant knew or should have known about the allegedly dangerous condition prior to the incident. *See* Supp. Resp. at 6–7; Reply at 3–4.

Next, Plaintiff argues that her "photographic and expert evidence . . . that the area immediately underneath the hatch had become dangerously rusted and degraded is, itself, evidence of notice, since it shows that the area had not been maintained for a long period of time[,]" and as such, the dangerous condition likely existed for a long period of time. Supp. Resp. at 7. Further, in support of her argument that the area had not been maintained for a long period of time, Plaintiff points to Borcegue's testimony that Borcegue did not believe that the area underneath the hatch was ever inspected but instead was "only accessed if [they] need to access the jacuzzi for a certain reason[,]" and Petrov's testimony "that the last time the area underneath the hatch was inspected was when the work order was performed." *Id.* at 7; Borcegue Dep. at 38; (ECF No. 60-1) at 21.

9

Here, the Court also does not find that this evidence creates a genuine issue of material fact as to notice. While "[a] maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures[,]" *Guevara*, 920 F.3d at 720 (cleaned up), the defective condition must still be "'reasonably detectable so as to invite corrective measures.'" *Tuite v. Carnival Corp.*, 713 F. Supp. 3d 1338, 1346 (S.D. Fla. 2024), *appeal dismissed*, No. 24-10665-FF, 2024 WL 3964617 (11th Cir. Aug. 13, 2024) (quoting *Tesoriero*, 965 F.3d at 1179) ("Unless there is something about the hazard that should have "invited" Carnival to take corrective action, notice cannot be imputed simply by the passage of time."). Further, the record evidence indicates that the hazardous nature of the hatch was not reasonably detectable. For instance, Borcegue testified that the relevant area was "cleaned everyday[,]" and there were "visual inspections" done every day, but there were not "any issues with the floor for the five year time period that [they] searched." Borcegue Dep. at 38–39. As such, the Court does not find that this evidence establishes notice.

Lastly, as evidence of notice, Plaintiff argues that "industry standards provide evidence that Defendant should have known that the subject hatch was unreasonably dangerous without the support beam it lacked at the time of [Plaintiff's] incident." Supp. Resp. at 8–13. Plaintiff's expert engineer, Dr. Francisco De Caso ("Dr. De Caso"), opined that the hatch was missing a crossbeam at the time of the incident, and therefore, there was not "adequate support" to carry the load, *i.e.* Plaintiff, in departure from safety guidelines and industry standards including the International Convention for the Safety of Life at Sea (SOLAS). *Id.*; (ECF No. 44-1) at 16–23.

However, Plaintiff's expert report alone is insufficient to create a genuine issue of material fact as to whether Defendant had notice of the allegedly dangerous condition. *See Francis v. MSC Cruises, S.A.*, No. 21-12513, 2022 WL 4393188, at *3 (11th Cir. Sept. 23, 2022) ("[W]e have not

held that failure to meet industry standards, standing alone, puts a cruise line on notice of a dangerous condition. Our cases that discuss failure to meet industry standards have relied on other indicators of notice to reverse a grant of summary judgment."); *see also Tuite*, 713 F. Supp. 3d at 1348 ("An expert's determination that a shipboard condition fails to comply with safety standards, no matter how long it has been in that condition, standing alone, fails to connect the noncompliance to a showing that the carrier *should have known* about the noncompliance. In other words, [a plaintiff] must still go beyond the mere fact of the alleged noncompliance and show that, again, there is something about the hazard that should have prompted Carnival to recognize and correct it.").

Here, as discussed above, Plaintiff has failed to put forth other evidence of notice that combined with Defendant's alleged failure to meet industry standards could establish that Defendant should have known about the hazard and corrected it. While Plaintiff argues that "industry standards, even ones that do not have the force of law, are sufficient by themselves to create a genuine issue of material fact on the issue of notice[,]" she is incorrect. *See* Supp. Resp. at 9–10. To support her argument, Plaintiff mainly relies on another court in this district's holding in *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356–57 (S.D. Fla. 2015). *Id.* In *Holderbaum*, the court denied the defendant's motion for summary judgment, finding that "[b]ased on the prior incidents and the evidence of non-compliance with the various safety standards, . . . a reasonable jury could find that Defendant had at least constructive knowledge" of the allegedly dangerous condition. 87 F. Supp. 3d at 1356. However, as another court in this district explained when presented with a plaintiff's analogous argument that industry standards alone are sufficient to create a genuine issue of material fact as to the issue of notice based on *Holderbaum*, "the finding that violations of safety standards *and* other evidence can, together, qualify as evidence

11

sufficient to establish constructive notice is a far cry from [the] theory that an extended period of non-compliance with industry standards alone is sufficient." *Tuite*, 713 F. Supp. 3d at 1348–49 (emphasis in original).   Further, the court in *Holderbaum* "underscore[d] that point" by "highlight[ing] abundant other evidence establishing the cruise ship operator's notice of the hazard[,]" including, but not limited to,  the presence of "Watch Your Step" warning signs, instances of other passengers who had previously "'suffered nearly-identical accidents[,]  . . . management committee discussions of each incident, [which were] followed by investigations[.]'" *Id.* (quoting  *Holderbaum*, 87 F. Supp. 3d at 1354).  Here, as detailed above, no similar other evidence of notice exists, and Plaintiff's theory that noncompliance with safety standards alone is sufficient to establish notice is unsupported by the caselaw. *See Tuite*, 713 F. Supp. 3d at 1348–49; *Holderbaum*, 87 F. Supp. 3d at 1356–57.

Accordingly, based the foregoing, the Court finds that Plaintiff fails to adduce record evidence sufficient to establish a genuine issue of material fact regarding Defendant's actual or constructive notice of any dangerous condition. On this basis, Defendant is entitled to summary judgment on Plaintiff's direct liability claims, Counts I, II, and III.  Because the Court finds that summary judgment is proper as to Count III based on lack of notice, the Court need not address Defendant's argument that summary judgment is also warranted as to Count III because there is no evidence Carnival designed or installed the hatch. *See* Mot. at 8–9.

### C.     Vicarious Liability

In addition to her three direct liability negligence claims, Plaintiff also brings two vicarious liability negligence claims, Counts IV and V. *See generally* Compl.  In Count IV, Plaintiff alleges that Defendant is vicariously liable for the failure of its crewmembers to warn Plaintiff of the alleged danger and to remedy the alleged danger. *Id.* ¶¶ 83–91.  In Count V, Plaintiff alleges that

12

Defendant is vicariously liable for the active negligence of its employees for their negligent design, construction and selection of the subject area.  *Id.* ¶¶ 92–106.

Defendant contends that it is entitled to summary judgment on Counts IV and V because there is no evidence of employee negligence, and the facts of this case do not sound under vicarious liability.  Mot. at 9–13.  Plaintiff does not directly respond to Defendant's vicarious liability arguments.  *See generally* Supp. Resp.  Plaintiff instead argues that evidence that Defendant approved of a negligently designed condition is sufficient to establish Defendant's vicarious liability, and notice is not required for vicarious liability claims.  *Id.* at 14–15 (citing *Hoover v. NCL (Bahamas) Ltd.*, No. 19-22906-CIV, 2020 WL 5834742 at *2 (S.D. Fla. Sept. 29, 2020); *Fylling v. Royal Caribbean Cruises, Ltd.*, No. 18-CV-21953, 2019 WL 8275158, at *4 (S.D. Fla. Dec. 10, 2019); *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583966 at *4 (S.D. Fla. Aug. 16, 2013); *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021)).  Additionally, Plaintiff argues that the testimony of Defendant's Senior Project Manager Alexis Sanchez shows that Defendant "at the very least, approved of the design of the whirlpool area, including the hatch, regardless of whether the hatch was in the initial drawings [Defendant's] architect made or not." *Id.* at 15–17.  In reply, Defendant states that it is not arguing that Plaintiff needs to prove notice for her vicarious liability claims, and Plaintiff's vicarious liability claims further fail because Plaintiff fails to "name any crewmember anywhere in her response[,]" or "name any action by any crewmember that she contends caused or contributed to her injuries."  Reply at 8.

Here, the Court agrees with Defendant that summary judgment is appropriate as to Counts IV and V because Plaintiff has failed to identify "any specific Carnival employee's negligent action that caused h[er] fall[]" based on either their negligent failure to warn or remedy or their negligent design.  *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1097 (11th Cir. 2022); *see also Selfridge*

*v. Carnival Corp.*, No. 20-23308-CIV, 2022 WL 796378, at *9 (S.D. Fla. Mar. 16, 2022) (finding that the plaintiff "confusingly concludes that his claim for vicarious liability should survive summary judgment because, under *Yusko*, a Plaintiff need not prove notice to establish this theory of liability. . . However, as Defendant points out, under *Yusko* a plaintiff still needs to prove the essential elements of negligence on the part of an employee in order to trigger vicarious liability").

Plaintiff is correct that she need not establish notice in setting forth a claim for negligence against a cruise line defendant based on a theory of vicarious liability. *See Yusko*, 4 F.4th at 1167 ("[T]he notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability."). However, the court in *Yusko* also held that "common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability . . . [as] a passenger will not be able to identify any specific employee whose negligence caused her injury." 4 F.4th at 1170. A plaintiff must still adduce record evidence sufficient to establish the elements of negligence on the part of an employee in order to trigger vicarious liability. *See Willis v. Royal Caribbean Cruises, Ltd.*, No. 1:20-CV-21192-KMM, 2022 WL 1521193, at *12 (S.D. Fla. May 4, 2022), *aff'd*, 77 F.4th 1332 (11th Cir. 2023).

Here, Plaintiff has not identified any specific Carnival employee whose negligence caused her fall. *Yusko* does not support a finding that Plaintiff "can avoid pleading the elements necessary to allege Carnival's direct liability" by titling Counts IV and V "as claims for vicarious liability and asserting in a conclusory allegation that Carnival was vicariously liable for any negligent action by any of its crewmembers." *See Holland*, 50 F.4th at 1097 (11th Cir. 2022). Accordingly, the Court grants summary judgment as to Counts IV and V.

14

## IV.   CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 41) is GRANTED.  The Clerk of Court is INSTRUCTED to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _29th_ day of October, 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:  All counsel of record

15